UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

SHERRI LYNN BUTLER          )
                            )
        *Plaintiff*,        )
                            )        Case No. 1:07-cv-184
v.                          )
                            )        Judge Mattice
CITY OF ENGLEWOOD, *et al.,* )
                            )
        *Defendants*,       )

## MEMORANDUM AND ORDER

Plaintiff brings this action against various individual and municipal defendants seeking damages, under 42 U.S.C. § 1983 and state law, for violation of her civil rights and injuries sustained when she was arrested on May 17, 2007 for driving under the influence of alcohol. Before the Court is the Motion for Summary Judgment of Defendants City of Englewood, Chief Daniel Blake, Lieutenant Darrel Wright, and Officer Randy Gabrel [Court Doc. No. 47]. Defendants seek summary judgment on Plaintiff's federal and state causes of action, discussed *infra*.

For the reasons explained below, the Court will **DENY** Defendants' Motion for Summary Judgment as to Plaintiff's excessive force claim with respect to Defendant Gabrel. The Court will **DENY** Defendant Gabrel's qualified immunity claim. The Court will also **DENY** Defendants' Motion for Summary Judgment as to Plaintiff's claim of negligence, assault, and battery with respect to Defendant Gabrel.

The Court will **GRANT** Defendants' Motion For Summary Judgment as to Plaintiff's claim of excessive force with respect to Defendants Blake, Wright, and the City of Englewood. The Court will **GRANT** Defendants' Motion For Summary Judgment as to

Plaintiff's claims of negligence, assault, and battery with respect to Defendants Blake, Wright, and the City of Englewood.

The Court will **GRANT** Defendants' Motion for Summary Judgment as to Plaintiff's claims of excessive force, excessive bail, cruel and unusual punishment, intentional infliction of emotional distress, and negligence per se. The Court will also **GRANT** Defendants' Motion for Summary Judgment as to Plaintiff's claims pursuant to the Tennessee constitution. The Court will **GRANT** Defendants' Motion for Summary Judgment as to Plaintiff's claim of municipal or official capacity liability.

## I.    SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material facts exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To refute such a showing, the nonmoving party must present some significant, probative evidence

indicating the necessity of a trial for resolving a material factual dispute. *Id.* at 322. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 248-49; *Nat'l Satellite Sports*, 253 F.3d at 907. If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. If the Court concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## II.    FACTS

The facts, viewed in the light most favorable to Plaintiff, are as follows.

On May 17, 2007, Plaintiff was in a vehicle collision while en route to a doctor's appointment in the city of Englewood, Tennessee. (Court Doc. No. 72-1, Pl.'s Resp. Br. 2). At the Plaintiff's suggestion, the two drivers moved their cars to the parking lot of a nearby gas station. (*Id.*) Defendant Gabrel arrived at this location to investigate the collision. (*Id.*) Although Defendant Gabrel allowed the other driver to leave the scene, he asked Plaintiff to perform a field sobriety test. (*Id.* at 3). After Defendant Gabrel concluded that Plaintiff failed the field sobriety test, he requested Plaintiff's consent to search her vehicle. (*Id.*) Plaintiff consented to the search. (Court Doc. No. 1, Pl.'s Compl. ¶ 17.)

During the search, Co-Defendants Chief Blake and Lieutenant Wright arrived on the scene. (Compl. ¶ 19.) Defendant Blake conducted additional field sobriety tests, which

Plaintiff also failed. (Court Doc. No. 48-1, Defs.' Mem. Supp. Summ. J. 4). Plaintiff was arrested for driving under the influence, handcuffed, and escorted by Defendant Gabrel toward his patrol vehicle. (*Id.*) Plaintiff has no issue with the manner in which she was handcuffed. (*Id.*)

Defendant Gabrel pushed and shoved Plaintiff while escorting her toward his patrol vehicle. (Pl.'s Resp. Br. 4.) Defendant Gabrel also stomped on Plaintiff's foot. (*Id.*) Plaintiff was in handcuffs and was not physically resisting arrest. (*Id.*) Plaintiff admits, however, that she "started mouthing off," cursing at Defendant Gabrel, and "flipping out about the way" Defendants Wright and Blake were searching her vehicle. (Court Doc. No. 72-18, Butler Dep. 133, 135.) After arriving at the patrol car, Defendant Gabrel slammed Plaintiff against the side and back of his patrol car several times. (*Id.* at 139.) This resulted in Plaintiff sustaining knee and elbow injuries. (*Id.* at 143.) After the vehicle's door was opened, Plaintiff slid into the patrol vehicle. (*Id.* at 149.) Plaintiff has no issue with the manner in which this movement was conducted. (*Id.*)

Defendants Wright and Blake did not render aid while Officer Gabrel pushed, shoved, and stomped on Plaintiff's foot while escorting her toward his patrol car. (Compl. ¶ 34.) Additionally, Defendants Wright and Blake did not render aid when Defendant Gabrel pushed Plaintiff against the side and back of his patrol car. (*Id.*) Defendants Blake and Wright, Gabrel's supervisors at the time, were talking to each other "off to the side" while they were conducting a search of Plaintiff's vehicle during this portion of her arrest. (Pl. Resp. Br. 18; Butler Dep. 138-139.)

Defendant Gabrel took Plaintiff to Woods Memorial Hospital to obtain a blood test pursuant to Tennessee's implied consent law. (Butler Dep. 149, 152; Defs.' Mem. Supp.

-4-

Summ. J. 6.)  Plaintiff refused chemical testing at the hospital, however, and was charged

with violating Tennessee's implied consent law and transported to McMinn County Jail by

Defendant Gabrel.  (Defs.' Mem. Supp. Summ. J. 6.)

The next day, Plaintiff's bond was set by Judge Watson in McMinn County.  (Defs.'

Mem. Supp. Summ. J. 6.)  Plaintiff posted bond and was released from jail three days after

she was arrested.  (Pl.'s Resp. Br. 5; Defs.' Mem. Supp. Summ. J. 6-7.)  Plaintiff pled guilty

to violating the Tennessee implied consent Law.  (Defs.' Mem. Supp. Summ. J. 7.)  Her

DUI charge was dismissed. (*Id.*)  Randy Ballew, Plaintiff's boyfriend at the time of her

arrest, attempted to file a complaint regarding Defendants' conduct with the City of

Englewood.  (Pl.'s Resp. Br. 7.)  Defendant Blake refused to Mr. Ballew's request to file a

complaint and Mr. Ballew's request for an investigation into Defendants' conduct during

Plaintiff's arrest.  (*Id.*)

## III.  ANALYSIS

Plaintiff asserts several causes of action under 42 U.S.C. § 1983 and Tennessee

state law.  Plaintiff's causes of action  under 42 U.S.C. § 1983 include: excessive force

(Compl. ¶ 50.a.),   false arrest (*id.* ¶ 50.a.), cruel and unusual punishment (*id.* ¶ 50.c.),

unreasonable bail (*id.* ¶ 44.c.), and official capacity and municipal liability (*id.* ¶ 46).  Plaintiff

also asserts certain state law claims against Defendants.  Plaintiff alleges Defendants

violated Article 1, §§ 13 and 32 of the Tennessee Constitution.  (*Id.* ¶ 50.e.)  In addition,

Plaintiff alleges negligence (*id.* Count III),  negligence per se (*id.* Count IV), assault and

battery (*id.* Count V), and intentional infliction of emotional distress (*id.* Count VI) claims

against Defendants.

Defendants contend Plaintiff's federal and state law claims are not meritorious. In the alternative, Defendants assert qualified immunity. (Court Doc. No. 7, Defs.' Answer ¶ 62.) Defendants also invoke all applicable defenses pursuant to the Tennessee Governmental Tort Liability Act with respect to Plaintiff's state law tort claims. (*Id.* ¶ 63.) Defendant City of Englewood asserts that it is immune from Plaintiff's intentional infliction of emotion distress claim under Tenn Code Ann. § 29-20-205. (*Id.* ¶ 64.)

Pursuant to Fed. R. Civ. P. 56(e)(2), Defendants sought summary judgment for Plaintiff's intentional infliction of emotion distress claim, negligence per se claim, and Tennessee constitutional claims, on the grounds that in the face of their properly supported motion, Plaintiff has failed to come forward with evidentiary support sufficient to preserve the bare allegations of her complaint for trial. (Court Doc. No. 76, Def.'s Reply Br. 2.) The Court agrees that Plaintiff has failed to preserve these claims because Plaintiff's opposition brief is silent on each of these causes of action. *See* Fed. R. Civ. P. 56(e)(2). Accordingly, Plaintiff's intentional infliction of emotion distress claim, negligence per se claim, and Tennessee constitutional claim, pursuant to Article 1, §§ 13 and 32 of the Tennessee Constitution are **DISMISSED WITH PREJUDICE.**

The Court will address Plaintiff's remaining causes of action below.

**A.    42 U.S.C. § 1983**

Section 1983 states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party

injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "Section 1983 makes liable only those who, while acting under color of state law, deprive another of a right secured by the Constitution or federal law." *Romanski v. Detroit Entm't, L.L.C.*, 428 F.3d 629, 636 (6th Cir. 2005).

To establish a claim pursuant to § 1983, a plaintiff must demonstrate two elements: "(1) that he was deprived of a right secured by the Constitution or laws of the United States, and (2) that he was subjected or caused to be subjected to this deprivation by a person acting under color of state law." *Gregory v. Shelby County*, 220 F.3d 433, 441 (6th Cir. 2000). Section 1983 "creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere." *Gardenhire v. Schubert*, 205 F.3d 303, 310 (6th Cir. 2000).

1. <u>*False Arrest*</u>

Plaintiff's first claims that she was falsely arrested by Defendants.[1]

A claim asserting the Fourth Amendment right against false arrest under § 1983 hinges on whether the arresting officer had probable cause to arrest the plaintiff. *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002) (citing *Painter v. Robertson*, 185 F.3d 557, 569 (6th Cir. 1999)). Probable cause exists where the "facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has

---

[1]The Court notes that the Defendants' reliance on *Heck v. Humphrey* is misplaced. Although Plaintiff admitted to violating Tennessee's implied consent statute, this statute explicitly states such a violation "shall not be considered as having committed a criminal offense." Tenn. Code. Ann. § 55-406(a)(4). Consequently, the Plaintiff's "action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff." *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). Accordingly, the fact that Plaintiff pled guilty to violating the implied consent statute does not implicate *Heck v. Humphrey*.

-7-

committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443

U.S. 31, 37 (1979).

> The Supreme Court has made clear that there is no precise formula for determining the existence or nonexistence of probable cause; rather, a reviewing court is to take into account the "factual and practical considerations of everyday life" that would lead a reasonable person to determine that there is a reasonable probability that illegality has occurred or is about to occur.

*United States v. Strickland*, 144 F.3d 412, 415 (6th Cir. 1998) (quoting *Illinois v. Gates*, 462

U.S. 213, 231 (1983)).

Plaintiff was arrested for driving under the influence of alcohol or drugs pursuant to

Tenn. Code Ann. § 55-10-401.  In Tennessee,

> **(a)** It is unlawful for any person to drive or to be in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state, or on any streets or alleys, or while on the premises of any shopping center, trailer park or any apartment house complex, or any other premises which is generally frequented by the public at large, while:
>
> > **(1)** Under the influence of any intoxicant, marijuana, narcotic drug, or drug producing stimulating effects on the central nervous system; or
> >
> > **(2)** The alcohol concentration in such person's blood or breath is eight-hundredths of one percent (.08 %) or more.

*Id.*

The record before the Court shows that there was probable cause to arrest Plaintiff

for driving under the influence.  When Defendant Gabrel arrived at the scene, Plaintiff had

difficulty standing upright.  (Butler Dep. 127-128.)  Plaintiff does not dispute Defendant

Gabrel's testimony that she smelled of alcohol and exhibited slurred speech.  (Court Doc.

No. 72-26, Gabrel Dep. 60.)  Plaintiff also does not dispute that she failed the field sobriety

tests administered by Defendants Gabrel and Blake.  (Pl.'s Resp. Br. 3; Defs.' Mem. Supp. Sum. J. 13.)  These facts support a finding of probable cause.  *Tenn. v. Wright*, Tenn. Crim. App., 2005 WL 2477533 at * 5 (Tenn. Crim. App. 2005) (probable cause was found where the defendant "smelled of alcohol, was unsteady on his feet, and had bloodshot eyes."); *Tenn. v. Green*,   Tenn. Crim. App., 2005 WL 2377353 at *1-2 (Tenn. Crim. App. 2005)(probable cause found was found when "the defendant failed various field sobriety tests.").

The circumstances described above could warrant a reasonable juror to conclude that there was probable cause to arrest Plaintiff for driving under the influence. Accordingly, Defendants' Motion For Summary Judgment will be **GRANTED** as to Plaintiff's claim of false arrest under § 1983.

### 2.   *Excessive Force*

Plaintiff also claims that Defendants engaged in excessive force in effectuating her arrest.  (Pl.'s Resp. Br. 3-5.)  Plaintiff claims that excessive force was employed at two points during her arrest: (1) in escorting her toward Defendant's Gabrel's patrol vehicle, and (2) while Defendant Gabrel was opening the door of his patrol vehicle.  (Butler Dep. 133-135, 145.)

The key inquiry in an excessive force claim is analyzed under the Fourth Amendment, and is to determine whether the degree of force used was objectively reasonable. *Graham v. Connor*, 490 U.S. 386, 394, 396-97 (1989); *Bass v. Robinson*, 167 F.3d 1041, 1045 (6th Cir. 1999); *Martin v. Heideman*, 106 F.3d 1308, 1311-12 (6th Cir. 1997).  The question whether force is excessive turns on the objective reasonableness of the officer's conduct under the circumstances, focused on "(1) the severity of the crime at

-9-

issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 394-96.

The ultimate question, however, is "whether the totality of the circumstances justifie[d]" the use of force. *Johnson v. City of Lincoln Park*, 434 F. Supp. 2d 467, 479 (E.D. Mich. 2006). "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. Thus, the Court must take into account the fact that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396-97.

In the case at bar, Plaintiff admits that her non-resistant demeanor changed while being escorted to Defendant Gabrel's patrol vehicle. Plaintiff testified that she "flipped out" and began to call Defendant Gabrel profanities while she was escorted to Defendant Gabrel's patrol vehicle. (Butler Dep.133-135.) Plaintiff, however, was not physically resisting arrest and was already handcuffed. (*Id.* at 135, 144.) Plaintiff was arrested for driving under the influence, a non-violent crime, and neither party contends that the Defendants faced bodily danger during this arrest.

A reasonable jury could conclude that Plaintiff has proffered sufficient facts to warrant a finding that Defendant Gabrel's used excessive force. The United States Court of Appeals for the Sixth Circuit has provided a clear directive barring the use of force on a subdued, yet verbally abusive, suspect. *Pigram v. Chaudoin,* 199 Fed. App'x 509, 513 (6th

Cir. 2006) (holding that "a slap to the face of a handcuffed suspect--even a verbally unruly suspect--is not a reasonable means of achieving anything more than perhaps further antagonizing or humiliating the suspect."). Accordingly, the Court **DENIES** Defendants' motion to dismiss Plaintiff's claim of excessive force with respect to Defendant Gabrel.

Plaintiff also alleges excessive force claims against Defendants Blake and Wright, under a theory of supervisory liability. In order to hold Defendants Wright and Blake liable for the use of excessive force, Plaintiff must prove that they (1) actively participated in the use of excessive force, (2) supervised the officer who used excessive force, or (3) owed the victim a duty of protection against the use of excessive force. See *Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Bruner v. Dunaway*, 684 F.2d 422, 426 (6th Cir. 1982).

Plaintiff alleges that Defendants Wright and Blake are liable for failing to protect her against the use of excessive force. (Pl.'s Resp. Br. 3, 18.) "[A] police officer who fails to act to prevent the use of excessive force may be held liable when (1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997). The law in this Circuit is clear that individuals in a supervisory capacity, as Defendants Wright and Blake were here, must have at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending employee to be held liable. *Caudell v. City of Loveland*, 226 Fed. App'x. 479, 482 (6th Cir. 2007)(citing *Hays v. Jefferson County*, 668 F.3d 869, 874 (6th Cir. 1982)).

-11-

Plaintiff's own testimony fails to support her allegation that Defendants Wright and Blake are liable for failing to protect against the use of excessive force. Plaintiff admits that Defendants Wright and Blake did not actively participate in the use of excessive force. (Butler Dep. 134, 138.) Additionally, Plaintiff does not allege that Officers Wright and Blake witnessed or observed Defendant Gabrel's use of excessive force. Instead, Plaintiff testified that Defendants Wright and Blake were talking to each other while searching her vehicle "off to the side" at the times in question. (*Id.*) Plaintiff also admits that she did not verbally complain or yell for assistance during this portion for arrest. (*Id.* at 130, 146-147.) Nothing in Plaintiff's testimony indicates Defendants Wright and Blake observed or had reason to know that excessive force was being used.

Turning to supervisory liability, Plaintiff's allegation that Defendants Blake and Wright were present during Defendant Gabrel's actions is insufficient to establish supervisory liability as a matter of law. *Caudell*, 226 Fed. App'x at 482 (holding that an allegation of nothing more than presence fails to make out a claim for supervisory liability under §1983). Without evidence to suggest to Defendants Blake and Wright "knew of the alleged deprivation there is no basis for the conclusion that [they] authorized, approved, or knowingly acquiesced in it, explicitly or implicitly." *Id.* Accordingly, the Court **GRANTS** Defendants' motion for summary judgment as to Plaintiff's claim of excessive force with respect to Defendants Blake and Wright.

3.    *Cruel and Unusual Punishment*

The Court notes that the Eighth Amendment's protections against cruel and unusual punishment apply only to post-conviction inmates. *Miller v. Calhoun County*, 408 F.3d 803,

-12-

812 (6th Cir. 2005); *Barber v. City of Salem*, 953 F.2d 232, 235 (6th Cir. 1992). As Plaintiff's § 1983 claims relate only to her arrest and pre-trial detention, and not to any post-conviction treatment, Plaintiff cannot sustain such an Eighth Amendment claim. Accordingly, Plaintiffs' § 1983 claims for cruel and unusual punishment will be **DISMISSED WITH PREJUDICE**.

　　　　　　4.　　*Unreasonable Bail*

Next, Plaintiff asserts a claim against Defendants pursuant to § 1983 for "[d]eprivation of bail without due process of law." (Compl. ¶ 44.c.) The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The Eighth Amendment's protections apply to pretrial detainees like Plaintiff through the Fourteenth Amendment's Due Process Clause. *See Bell v. Wolfish*, 441 U.S. 520, 535 & n.16 (1979); *Roberts v. City of Troy*, 773 F.2d 720, 723 (6th Cir. 1985). While the Sixth Circuit has not imposed liability on an arresting defendant for a violation of an arrestee's Eighth Amendment right against excessive bail, another federal circuit court has done so. *See Wagenmann v. Adams*, 829 F.2d 196, 211-12 (1st Cir. 1987) (holding that a law enforcement defendant may be liable in a § 1983 excessive bail claim if he "help[s] to shape" or "exercis[es] significant influence over[] the bail decision."). Nevertheless, even assuming that such a cause of action exists within the Sixth Circuit, Plaintiff has failed to preserve any claim against the Defendants in response to their motion for summary judgment.

As a preliminary matter, Plaintiff offers nothing by way of allegation, testimony, or evidence to suggest that Defendants Blake or Wright were in any way involved with

Plaintiff's incarceration. Plaintiff therefore fails to preserve any claims against these Defendants stemming from issues of bond or bail, and the Court , accordingly, will **GRANT** Defendants' Motion for Summary Judgment with respect to Defendants Wright and Blake.

Plaintiff does offer some support for her unreasonable bail claim against Defendant Gabrel. According to Plaintiff's deposition testimony, she "heard him say she is a flight risk, no bond."[2] (Butler Dep. 164.) Plaintiff's own testimony, however, establishes that a judicial officer for the State of Tennessee promptly conducted a bond hearing and granted bond. (*Id.* 162-63.) Importantly, Plaintiff does not take issue with the amount of the bond set, but instead challenges the length of time transpiring before bond was granted. Although Plaintiff suggests throughout her pleadings that she was held without bail for a number of days, she was admitted to the McMinn County Jail at 2:09 AM on May 18 (Court Doc. 47-9, McMinn County Jail Intake Sheet), and was—again, according to her own testimony—given a hearing and granted bond "the very next day." (Butler Dep. 162.) These facts, taken directly from Plaintiff's testimony, make clear that any influence Defendant Gabrel exerted over the timing of Plaintiff's bail decision was not to her detriment. Accordingly, the Court will also **GRANT** Defendant Gabrel's Motion for Summary Judgment as to Plaintiff's claims stemming from her bail or bond.

     5.    *Qualified Immunity*

With respect to Plaintiff's § 1983 claims against Defendant Gabrel in his individual capacity, Defendant Gabrel contends that all such claims should be dismissed because he

---

[2] While Plaintiff also recounts that "[i]t was in the newspaper that I was held with no bond . . . ," such a declaration is hearsay, *see* Fed. R. Evid. 801(c), 805, and cannot establish facts necessary to avoid summary judgment, see *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 927 (6th Cir. 1999).

-14-

is entitled to qualified immunity. (Def. Mem. Supp. Summ. J. 24-26.)

The doctrine of qualified immunity shields " 'government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Ewolski v. City of Brunswick,* 287 F.3d 492, 501 (6th Cir. 2002)(quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). The United States Supreme Court has articulated a two-part test for determining whether a law enforcement officer is entitled to qualified immunity. *See Brosseau v. Haugen,* 543 U.S. 194 (2004); *Saucier v. Katz,* 533 U.S. 194, 201 (2001).

Under this test, district courts must consider whether:

"the facts alleged show the officer's conduct violated a constitutional right." If the plaintiff can establish that a constitutional violation occurred, a court should ask "whether the right was clearly established . . . in light of the specific context of the case, not as a broad general proposition."

*Lyons v. City of Xenia,* 417 F.3d 565, 571 (6th Cir. 2005) (quoting *Saucier,* 533 U.S. at 201).

Once a defendant claims qualified immunity, the burden shifts to the plaintiff to demonstrate that the defendant is not entitled to the defense of qualified immunity. *Myers v. Potter,* 422 F.3d 347, 352 (6th Cir. 2005). When a defendant moves for summary judgment and asserts qualified immunity, the plaintiff must "1) identify a clearly established right alleged to have been violated; and 2) establish that a reasonable officer in the defendant's position should have known that the conduct at issue was undertaken in violation of that right." *Pray v. City of Sandusky,* 49 F.3d 1154, 1158 (6th Cir. 1995). At the outset, Plaintiff's allegation of excessive force by Defendant Gabrel meets the first prong of this inquiry. *See supra.*

Next, the Court must ask "whether at the time of [Defendant] actions, it was 'clearly established' in this more 'particularized' sense" that Defendant Gabrel had violated Plaintiff's Fourth Amendment rights during her arrest. *Brosseau v. Haugen*, 534 U.S. 194, 199-200 (2004). In "an obvious case, these standards can 'clearly establish' the answer, even without a body of relevant case law." *(Id.)* The key inquiry in determining whether a right was clearly established is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier,* 533 U.S. at 202; *see also Ewolski,* 287 F.3d at 501 ("For a right to be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" (quoting *Russo v. City of Cincinnati,* 953 F.2d 1036 (6th Cir. 1992))). Although the conduct in question need not have been previously held unlawful, the unlawfulness must be apparent in light of pre-existing law. *Id.*

A reasonable officer would have understood that Defendant Gabrel's actions during Plaintiff's arrest were excessive force. Viewing the facts before it in the light most favorable to the non-moving party, as the Court must in the context of Defendants' pending motion for summary judgment, during her arrest, Plaintiff was slammed against a patrol vehicle several times, shoved, and her foot was stomped on. When this degree of force was employed Plaintiff was subdued in handcuffs, was not physically resisting arrest, and did not pose a physical threat to Defendants. Pre-existing law makes clear that law enforcement officers may not gratuitously use force to inflict pain on an already neutralized or incapacitated suspect. *Adams v. Metiva*, 31 F.3d 375, 387 (6th Cir. 1994); *Phelps v. Coy*, 286 F.3d 295, 301 (6th Cir. 2002). Plaintiff's verbal insults do not excuse Defendant Gabrel from comporting with this standard of behavior. The Sixth Circuit has held that a

single blow to a subdued, yet verbally abusive, suspect constitutes excessive force. *Pigram v. Chaudoin,*199 Fed. App'x 509, 513 (6th Cir. 2006) (holding that "a slap to the face of a handcuffed suspect--even a verbally unruly suspect--is not a reasonable means of achieving anything more than perhaps further antagonizing or humiliating the suspect."); *see also Carico v. Benton, Ireland & Stovall,* 68 Fed. App'x 632, 637 (6th Cir. 2003)(noting that the plaintiff "can clearly claim excessive force against [the officer] for the slap to the face").

A reasonable juror could conclude that Plaintiff has met her burden by presenting sufficient facts to establish that Defendant Gabrel's post-resistance force was obviously gratuitous and excessive. *Brosseau*, 534 U.S. at 199-200   Accordingly, Defendant Gabrel is not entitled to qualified immunity from Plaintiff's § 1983 claim of excessive force.

6.    *Official Capacity and Municipal Liability*

With respect to Plaintiffs' § 1983 claims against the individual Defendants in their official capacities, the Court notes that "[a] suit against an individual in his official capacity is the equivalent of a suit against the governmental entity." *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994); *see also Brandon v. Holt*, 469 U.S. 464, 471-72 (1985).  Thus, the § 1983 claims against these Defendants in their official capacities are actually claims against the municipality, and are redundant in light of identical claims brought against the City of Englewood.

"Local governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs.*, 436 U.S.

-17-

658, 690 (1978). Municipalities may not be held liable under § 1983 under the theory of *respondeat superior*. *Id.* at 691. Rather, an entity is responsible under § 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" alleged by plaintiff. *Id.* at 694. In other words, "[t]he plaintiff must . . . demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of the County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 404 (1997).

A plaintiff can establish a municipal policy or custom in two ways: (1) a decision-maker with final authority issues an official proclamation on the subject, or (2) a custom is established through a course of conduct that is "so permanent and well settled as to virtually constitute law." *Hilliard v. Walker's Party Store, Inc.*, 903 F. Supp. 1162, 1179 (E.D. Mich. 1995).

"[M]unicipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). For example, a single decision by a legislative body "unquestionably constitutes an act of official government policy" and can subject that municipality to liability under § 1983. *Id.* (citing *Owen v. City of Independence*, 455 U.S. 622 (1980) and *Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981)). In addition, decisions by officials " 'whose acts or edicts may fairly be said to represent official policy' " may give rise to municipal liability under § 1983. *Id.* at 480 (quoting *Monell*, 436 U.S. at 694). "Official policy" often refers to

-18-

formal rules that are intended to establish a plan of action that will be followed consistently and over time, but "official policy" can also mean the decision by a governmental entity's authorized decisionmaker to adopt a particular course of action. *Id.* at 480-81. Moreover, "where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly." *Id.* at 481. However, not every decision by municipal officers subjects a municipality to liability under § 1983. *Id.* "Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Id.* When municipal liability is based on a single decision, "the evidence that the municipality . . . acted and that the plaintiff . . . suffered a deprivation of federal rights [must also demonstrate] fault and causation." *Brown*, 520 U.S. at 405.

In the instant case, Plaintiff advances several theories of municipal liability. First, Plaintiff argues that Defendant Blake, as chief of police, is a final policymaker so that his involvement in Plaintiff's arrest gives rise to municipal liability under *Pembaur.* As explained above, a single act by a final policymaker can constitute a municipality's official policy. The final policymaker must, however, be acting in a "policymaking capacity." *Wooten v. Logan*, 92 Fed. App'x 143, 146-47 (6th Cir. 2004). Here, Plaintiff has offered no evidence to suggest that Defendant Blake was acting in his policymaking capacity during her arrest. Instead, the record suggests that Defendant Blake "acted in the guise of a patrol officer making a traffic stop—not as chief law enforcement officer." *Id.* at 147. Accordingly, Defendant Blake's involvement in Plaintiff's arrest cannot serve as the basis for municipal liability.

-19-

Second, Plaintiff contends that Defendant Blake's refusal to accept and investigate Mr. Ballew's complaint regarding Plaintiff's arrest attaches municipal liability. A final policymaker can create municipal liability by ratifying a subordinate's unconstitutional acts. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) ("If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final."). But Plaintiff has not demonstrated that Defendant Blake ratified Defendant Gabrel's decision to use excessive force. Nothing in the record suggests that Defendant Blake instructed, directly supervised, or approved of Defendant Gabrel's actions. Instead, Defendant Blake's refusal to investigate Mr. Ballew's complaint must be evaluated as an inaction theory. In other words, Plaintiff's cause of action is based not on Defendant Blake's action in approving Defendant Gabrel's use of force, but instead on his inaction in responding to Mr. Ballew's complaint. In addition to this complaint about a specific internal investigation, Plaintiff also contends that, generally, the City of Eastwood's police department lacks proper procedures for internal investigations, and fails to secure its records (*i.e.*, videotape) of arrests.

To prevail under an inaction theory of municipal liability, Plaintiff must establish, *inter alia*, "the existence of a clear and persistent pattern of violating federal rights." *Powers v. Hamilton County Pub. Defender Com'n*, 501 F.3d 592, 607 (6th Cir. 2007); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (requiring, under an "inaction theory" of policy or custom, proof that a "clear and persistent pattern" of civil rights deprivation exists); *Williams ex rel. Williams v. Ellington*, 936 F.2d 881, 884-85 (6th Cir. 1991) (declining to find municipal liability in the absence of evidence of "repeated or even sporadic" deprivations of constitutional rights). Plaintiff has provided no evidence that

-20-

establishes past failures to investigate citizen's complaints or otherwise properly conduct internal investigations. Accordingly, Plaintiff has not preserved her inaction theory of municipal liability in light of Defendants' Motion for Summary Judgment.

As Plaintiff has not preserved a viable theory of municipal liability, the Court will **GRANT** Defendants' Motion for Summary Judgment as to her § 1983 claims against the individual Defendants in their official capacities and against Defendant City of Englewood.

### B. State Law Claims

In addition to her federal claims pursuant to § 1983, Plaintiff also asserts several state law causes of action. Plaintiff alleges that all Defendants are liable for the state-law torts of negligence, assault and battery. Defendants counter by pleading immunity under the Tennessee Governmental Tort Liability Act ("TGTLA"), Tenn. Code. Ann. §§ 29-20-101 to 408, and by arguing that Plaintiff's state law claims are untimely.

The TGTLA serves to waive select portions of the absolute sovereign immunity enjoyed by governmental entities, *see* Tenn. Code. Ann. § 29-20-201, and government employees sued in their official capacities, *see Cox v. State*, 399 S.W.2d 776 (Tenn. 1965) (holding that suits against state employees acting in their official capacities are deemed to be suits against the State itself). If the TGTLA does not remove sovereign immunity from a governmental entity, that entity's employees can be liable in their individual capacities. *Baines v. Wilson County*, 86 S.W.3d 575, 583 n.5 (Tenn. Ct. App. 2002) (citing Tenn. Code. Ann. § 29-20-310). Conversely, if sovereign immunity for a governmental entity is removed, its employees are absolutely immune from suit in their individual capacities.[3]

---

[3] Unless the employee is a "health care practitioner" being sued for medical malpractice. Tenn. Code. Ann. § 29-20-310(b).

-21-

Tenn. Code Ann. § 29-20-310(b); *Neely v. McDonald*, No. M2000-00099-COA-R3-CV, 2000 WL 1568387, *2 (Tenn. Ct. App. Oct. 20, 2000).  The Court must evaluate Plaintiff's state law claims under this scheme.

### 1.  *Official Capacity*

Plaintiff's assault, battery and negligence claims all fall under the TGTLA to the extent that they are against the individual Defendants in their official capacities.  *See Cox v. State*, 399 S.W.2d 776 (Tenn. 1965) (holding that suits against state employees acting in their official capacities are deemed to be suits against the State itself).  The TGTLA provides, in pertinent part:

> Immunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment *except if the injury arises out of*: . . . false imprisonment pursuant to a mittimus from a court, false arrest, malicious prosecution, intentional trespass, abuse of process, libel, slander, deceit, interference with contract rights, infliction of mental anguish, invasion of right of privacy, or *civil rights* [or] the institution of prosecution of any judicial or administrative proceeding, even if malicious or without probable cause . . . .

Tenn. Code Ann. § 29-20-205 (emphasis added).  The exceptions listed in § 29-20-205 are the only torts for which immunity is *not* removed when an injury is proximately caused by a negligent act or omission of an employee within the scope of his employment.  *Limbaugh v. Coffee Med. Ctr.*, 59 S.W.3d 73, 84 (Tenn. 2001).

As noted above, § 29-20-205 provides that immunity for the governmental entity is retained when the injury arises out of "civil rights."  This Court construes "civil rights" under § 29-20-205 as including claims arising under the federal civil rights laws and the United States Constitution.  *Hale v. Randolph*, No. 1:02-cv-334, 2004 WL 1854179, at *17 (E.D. Tenn. Jan. 30, 2004); *cf. Brooks v. Sevier County*, 279 F. Supp. 2d 954, 960 (E.D. Tenn.

2003). Here, as in *Hale*, Plaintiffs' state law claims against the City of Englewood "clearly arise out of and directly flow from the allegations that the police officers deprived [Decedent] of [his] civil rights." *Hale*, 2004 WL 1854179, at *17. Because Plaintiffs assert their state law claims in the context of a civil rights case, their alleged injuries arise out of "civil rights" and the City is entitled to immunity under the TGTLA. *See id*.

### 2. *Individual Capacity*

As explained above, under the TGTLA, if the governmental entity is not amenable to suit—in other words, if immunity has not been removed by § 29-20-205—then employees of the entity are proper party-defendants. § 29-20-310(c). The Court will therefore address each of Plaintiff's individual-capacity state law claims in turn.

### 3. *Negligence*

A negligence claim requires that a plaintiff establish: (1) a duty of care owed to plaintiff by defendant; (2) conduct falling below that standard of care resulting in a breach of duty by defendant; (3) an injury or loss; (4) cause in fact; and (5) proximate or legal cause. *West v. East Tenn. Pioneer Oil Co.*, 172 S.W.3d 545, 550 (Tenn. 2005).

With regard to the duty and the standard of care, in a negligence case involving the use of excessive force during an arrest, Tennessee courts have held that the standard of care is properly evaluated under an "objectively reasonable" standard:

> The measure of force permissible in making an arrest is that which an ordinary, prudent, and intelligent person with the same knowledge, and in the same situation as, the arresting officer would have deemed necessary, or such force as the officer in the exercise of a reasonable judgment believes is necessary. The officer is not required to determine at his or her peril the precise amount of force necessary in each instance and to use that much and no more; rather, the officer may be guided by the reasonable appearances and the nature of the case in determining the amount of force to be used.

*McCrary v. City of Memphis*, No. W2004-01840-COA-R3CV, 2005 WL 452788, at *7 (Tenn. Ct. App. 2005) (quoting 6A C.J.S. *Arrest* § 53 (2004)). This standard is substantially similar, if not identical, to the standard for use of force under the Fourth Amendment. The Court has already held that, because of the disputed material facts in this case, a jury must make the determination as to whether Defendant Gabrel's actions were reasonable under the Fourth Amendment. The same can be said for whether Defendant Gabrel's actions were "objectively reasonable" under Tennessee state negligence law. The disputed material facts in this case necessitate a jury's determination as to whether Defendant Gabrel's use of force fell below the standard of care such that it was a breach of duty.

As to Defendants Blake and Wright, Plaintiff fails to preserve her negligence causes of action for the same reason that she fails to preserve her excessive force claims against these Defendants. She has not established that Defendants Blake and Wright were directly involved in her apprehension.

4.  *Assault and Battery*

Under Tennessee law, a cause of action for assault and battery can be proven where an officer has caused damage by an excessive and unprovoked use of force. *City of Mason v. Banks*, 581 S.W.2d 621, 626 (Tenn. 1979) (holding that the officer "was liable for the damages caused by his excessive and unprivileged use of force under the intentional tort of battery"). Further, an assault is "any act tending to do corporal injury to another, accompanied with such circumstances as to denote at the time an intention, coupled with the present ability, of using actual violence against the person." *Lewis v.*

-24-

*Metro. Gen. Sessions Court for Nashville & Davidson County*, 949 S.W.2d 696, 703 (Tenn. Ct. App. 1997). Tennessee courts have applied federal case law on claims for assault and battery in similar contexts and have held that, under Tennessee common law, "an officer may only use the force reasonably necessary to accomplish [an] arrest, with due regard to the other attendant circumstances, such as his own safety or that of others present." *City of Mason*, 581 S.W.2d at 626.

The Court's analysis regarding Plaintiffs' § 1983 excessive force claim applies equally to her Tennessee state law claims for assault and battery. As explained above, Plaintiff has set forth adequate grounds for her claim of excessive force against Defendant Gabrel. Because Tennessee courts apply the same "excessive force" principles to assault and battery claims against police officers, Plaintiff has additionally set forth adequate grounds against Defendant Gabrel for assault and battery under Tennessee law. But similarly, Plaintiff fails to preserve her assault and battery causes of action against Defendants Blake and Wright. She has not established that Defendants Blake and Wright were directly involved in her apprehension.

## IV. CONCLUSION

Defendants' Motion for Summary Judgment [Court Doc. No. 47] is **GRANTED IN PART** and **DENIED IN PART** as follows:

Plaintiff's excessive force claim under 42 U.S.C. § 1983 with respect to Defendants Wright, Blake, and the City of Englewood is **DISMISSED WITH PREJUDICE**. Plaintiff's false arrest claim under 42 U.S.C. § 1983 is **DISMISSED WITH PREJUDICE**. Plaintiff's unreasonable bail claim under 42 U.S.C. § 1983 is **DISMISSED WITH PREJUDICE**.

Plaintiff's cruel and unusual punishment claims under 42 U.S.C. § 1983 is **DISMISSED WITH PREJUDICE**. Plaintiff's official capacity and municipal liability claims are **DISMISSED WITH PREJUDICE**.

Plaintiff's intentional infliction of emotional distress claim, negligence per se claim, and Tennessee constitutional claim, pursuant to Article 1, §§ 13 and 32 of the Tennessee Constitution are **DISMISSED WITH PREJUDICE.** Plaintiff's negligence, assault and battery claims are **DISMISSED WITH PREJUDICE** with respect to Defendants Blake, Wright, and the City of Englewood.

Plaintiff's excessive force claim under 42 U.S.C. § 1983, as well as, her state law negligence, assault and battery claims against Defendant Gabrel in his individual capacity are left pending before the Court for trial.

SO ORDERED this 25th day of August 2008.

_____
*s/ Harry S. Mattice, Jr.*
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE